SIMON, Appellant, vs. VAN DE HEY and others, Respondents.

*January 13—February 8, 1955.*

52

For the appellant there was a brief by *Van Hoof & Van Hoof* of Little Chute, and oral argument by *Gerald H. Van Hoof*.

For the respondents there was a brief by *Benton, Bosser, Fulton, Menn & Nehs* of Appleton, and oral argument by *David L. Fulton*.

STEINLE, J.    Appellant seeks reversal of the judgment on the following bases:

First: The trial court's instruction to the jury on the subject of management and control was prejudicially erroneous.

Second: There was no credible evidence to support the jury's finding that the plaintiff was negligent as to management and control.

Third: There was no credible evidence to support the jury's finding that the plaintiff was negligent as to speed.

Fourth: The defendant Van de Hey was negligent as a matter of law for failure to yield the right of way.

Fifth: The trial court improperly refused to submit to the jury the plaintiff's requested instruction on the question of liability without contact.

With reference to appellant's first contention, it is observed that the inquiries as to management and control appeared in subdivisions of questions 1 and 3 of the special verdict. The pertinent instructions were:

"Questions 1 and 3 inquire as to whether or not the defendant, Van de Hey, and the plaintiff, Simon, were negligent in certain respects.

"Negligence is defined as a want of ordinary care. Ordinary care is defined as that degree of care which the great mass of mankind exercises under like or similar circumstances.

"Subdivision (b) of question No. 1 and subdivision (b) of question No. 3 inquire as to whether the defendant Van de Hey and the plaintiff Simon, respectively, were negligent as to the management and control of their vehicles.

"In this connection you are instructed that it is the duty of every driver to keep his vehicle under proper control and to exercise ordinary care in that regard, so that when danger appears he may stop his vehicle, reduce his speed, change his course, or take such other means to avoid injury or damage as may reasonably appear proper and feasible. He is required to exercise that degree of care in the control and management of his automobile as is exercised by the ordinarily prudent careful person under the same or similar circumstances.

"Section 85.395 of the Wisconsin statutes [1951] provides:

"'It shall be unlawful for any person to operate any vehicle upon a highway . . . without due caution and circumspection, or in a manner so as to endanger or be likely to

endanger the property, life, or limb of any person, or without due regard to the traffic, surface, width of the highway, and any other condition of whatever nature then existing.' "

Appellant maintains that since under the law of this state it is not the duty of a driver to have his car under such control as to enable him to avoid accidents, but that it is his duty to use ordinary care to that end, the phrase in the court's instruction "so that when danger appears he may stop his vehicle, reduce his speed, change his course, or take such other means to avoid injury or damage as may reasonably appear proper and feasible" was clearly erroneous and prejudicial.

It appears that the phraseology to which appellant objects is taken out of a paragraph of the instructions which considered as a whole, correctly states the obligations of a driver as to particulars inquired about. True, the duty of a driver is not to have his car under such control as to enable him to avoid accident, but it is his duty to use ordinary care to that end. *Schulz v. General Casualty Co.* (1939), 233 Wis. 118, 288 N. W. 803; *Beer v. Strauf* (1941), 236 Wis. 597, 296 N. W. 68. In our opinion the instruction when considered in its entirety, correctly stated the applicable rule. The term "ordinary care" was defined. The court instructed the jury that a driver is required to exercise ordinary care in the control and management of his automobile. The statute requiring the exercise of due caution and circumspection in the operation of a motor vehicle upon a public highway was submitted. There is nothing of record to indicate that the jury may have considered separately and out of context that portion of the instructions to which appellant alludes. We find no error in this regard.

As to appellant's second, third, and fourth contentions it appears that the evidence is conflicting, and under the circumstances, there is applicable to the jury's findings the well-

established rule set forth in *Dachelet v. Home Mut. Casualty Co.* (1951), 258 Wis. 413, 419, 46 N. W. (2d) 331, that,—

" '. . . if the evidence is conflicting, or if the inferences to be drawn from the credible evidence are doubtful and uncertain, and there is any credible evidence which under any reasonable view will support or admit of an inference either for or against the claim or contention of any party, then the rule that the proper inference to be drawn therefrom is a question for the jury should be firmly adhered to, and the court should not assume to answer such question either upon a motion for nonsuit or direction of verdict, or by substituting another answer after the verdict is returned.' *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 115, 228 N. W. 741; *Wisconsin Telephone Co. v. Russell,* 242 Wis. 247, 7 N. W. (2d) 825; Czerniakowski v. National Ice & Coal Co. 252 Wis. 112, 31 N. W. (2d) 156."

Evidence was presented at the trial on behalf of the plaintiff Simon to the effect that his milk truck was 100 to 125 feet north of Highway S when the truck driven by Van de Hey started pulling out slowly from the stop sign and into the intersection. However, there is also evidence of record that when the passenger car which preceded Simon's truck was 50 feet or less from the intersection, the Simon truck was 500 feet or more north of the intersection; that after turning to the left and passing the truck driven by Van de Hey, the passenger car proceeded about 500 to 600 feet east on Highway S before the Simon truck tipped over. There is evidence, too, that when the rear of the truck driven by Van de Hey was in the center of the intersection, Simon was 150 feet north of the intersection and was crossing the center line of Highway 55. The record indicates that skid marks measuring 81 feet in length were visible on the east side of Highway 55, commencing at a point north of Highway S, and leading toward the place where the milk truck upset.

It was clearly within the jury's province to determine the credibility of the evidence and to draw reasonable inferences therefrom. The determination of weight of evidence is a jury

function. There is in the record ample competent evidence from which the jury could find that Simon was farther away from the intersection than 100 to 125 feet when the truck driven by Van de Hey started forward, and that he was not confronted with a sudden emergency. Simon admitted to a speed of 30 to 35 miles per hour. According to the table of the motor vehicle department of record herein, a vehicle traveling at 30 miles per hour can be stopped at 83 feet; one traveling 40 miles per hour in 132 feet; and one traveling 50 miles per hour in 193 feet. These figures include both braking time and reaction time. Proper management of an automobile includes the proper application of brakes. The matter of Simon's timely application of brakes was a consideration for the jury in determining his management of the truck. At his admitted speed of 30 to 35 miles per hour Simon should have been able to safely brake his vehicle to a stop in less than 100 to 125 feet, the distance that he claimed separated the trucks when Van de Hey moved forward. Since the jury was entitled to find from the evidence that the distance separating the trucks was considerably farther than that testified to by Simon (at least 250 feet upon the testimony of witnesses Garvey and Appleton, and 400 feet or more upon the testimony of witness Daul), it is apparent that under such determination the jury was entitled to consider an even greater ability of Simon to have stopped sooner, and without untoward result.

There is an abundance of evidence in the record from which the jury was entitled to draw inferences regarding Simon's application of brakes and the swerving of his truck out of its course. The jury found that with reference to one or both of said particulars he had not exercised ordinary care in the management and control of the truck. These findings may not be disturbed.

With reference to the item regarding negligence as to speed on Simon's part, it is submitted that Simon's testimony that

he was proceeding at 30 to 35 miles per hour is not contradicted, and must be accepted as a verity. However, it appears that the jury had other evidence before it regarding the speed at which the milk truck was being driven. Van de Hey testified that as he emerged from his stopped position, he was unable to see the milk truck. Highway 55 at a point about one tenth of a mile north of Highway S slopes downward to the north at an abrupt incline. Police Officer E. A. Walch testified that a person situated in the cab of a truck such as that in which Van de Hey was seated when stopped at the stop sign on Highway S, is not able to see any of the road beyond the crest of the hill, or any buildings beyond because of the presence of an embankment. The jury may have considered that Simon's truck was not visible to view because of such situation in the terrain when Van de Hey started forward. Obviously, in view of such facts, the jury may have inferred that Simon was traveling at a rate of speed in excess of 30 to 35 miles per hour.

There is evidence of the same import given by Alice Daul. She testified that she was 50 feet or less from the intersection when the Simon truck was at the top of the hill, 500 or more feet away. She passed the stopped truck, and continued in an easterly direction for 500 to 600 feet before the Simon truck tipped over. If it is to be assumed that Mrs. Daul was traveling at 40 miles per hour (which is higher than any speed testified to by her), and that the Simon truck was 300 or 400 feet north of the intersection when Van de Hey pulled out, then Simon's speed could be fixed by the jury at a rate in excess of that permitted by statute. Forty-five miles per hour is the maximum limit under sec. 85.40 (1) (i), Stats., for trucks of the weight operated by Simon. If it is to be assumed that the Daul car traveled at a lesser rate of speed, then the likelihood of Simon's excessive speed became greater. Simon testified that he did not substantially reduce his speed as he approached the intersection. The trial

court, besides instructing the jury with reference to provision of sec. 85.40 (1) (i), also submitted consideration of provisions in sec. 85.40 (2) (a) and (b).

Sec. 85.40 (2) (a), Stats., provides:

"No person shall operate a vehicle at a speed greater than is reasonable and prudent under conditions and having regard for the actual and potential hazards then existing and the speed of the vehicle shall be so controlled as may be necessary to avoid colliding with any object, person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and using due care."

Sec. 85.40 (2) (b), Stats., provides in part:

"The operator of every vehicle shall, consistent with the requirements of paragraph (a), operate at an appropriate reduced speed when approaching and crossing an intersection. . . ."

There was competent evidence from which the jury was entitled to find that Simon had violated the provisions of one or more of these statutes as to speed restrictions. The findings may not be disturbed.

Appellant next contends that Van de Hey was guilty of negligence as a matter of law in failing to yield the right of way. Under the jury's findings we are obliged to hold that there is no merit to such contention. Obviously, the jury was of a mind that the Simon truck was a considerable distance from the intersection when Van de Hey started to cross, and that Van de Hey did not plunge into the pathway of the Simon truck. The jury determined that the milk truck was moving at an excessive rate of speed. Under the provisions of sec. 85.18 (1), Stats., the driver of a vehicle driving at an unlawful speed shall forfeit any right of way which he might have under statute.

Appellant's last contention is that the trial court improperly refused to submit to the jury his requested instructions on the question of liability without contact.

Counsel for appellant requested separate instructions on this point. Essential for consideration here is the proposed statement that:

"Actual collision is not necessary to give rise to actionable negligence on the part of the defendant, Orville Van de Hey. It is sufficient if the negligence of the defendant resulted in a situation the proximate result of which was plaintiff Arthur Simon's injuries and damages."

The court in its instructions with reference to proximate cause as to any item of negligence found on the part of either party, charged the jury as follows:

"The question of cause in this case is not affected by the fact that the vehicles did not collide."

It is considered that the instruction given by the court correctly and sufficiently apprised the jury that actual collision was not necessary to give rise to causal negligence in relation to the particulars inquired about.

Trial courts are not required to adopt any particular phrasing of a rule of law given to the jury, and error cannot be predicated upon mere refusal to give a requested charge which correctly states the law if it is in fact embodied in substance in the general instruction given. *Herlitzke v. La Crosse Inter-Urban Telephone Co.* (1911), 145 Wis. 185, 130 N. W. 59.

By placing its reference to this subject in that part of the instructions dealing with proximate cause, the court was not in error. It is in connection with the item of cause that the jury is obliged to consider the principle.

*By the Court.*—Judgment affirmed.