CLOCHEREZ and another, Respondents, vs. MILLER and another, Appellants.

*November 3—December 2, 1952.*

For the appellants there was a brief by *Genrich & Terwilliger,* attorneys, and *Emil A. Wakeen, Walter H. Piehler,* and *Neil M. Conway* of counsel, all of Wausau, and oral argument by *Herbert Terwilliger.*

For the respondents there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and oral argument by *Charles F. Smith*.

BROADFOOT, J.   The appellants contend that the testimony raised a jury issue as to Hubert Clocherez's negligence with respect to lookout and with respect to management and control of his automobile. A determination of these questions necessitates a review of the material testimony.

The record discloses that the intersection of the two highways was located at the top of a hill. In the construction of the arterial highway east of the intersection, a cut had been made in the hill, leaving a dirt embankment on the north side thereof. A driver from the east must travel upgrade a distance of six hundred fifty feet until the intersection is reached. A driver from the north must also ascend a hill, the crest of which, according to the testimony most favorable to the appellants, was one hundred twenty-five feet from the intersection. The highway between the crest of the hill to the north and the intersection was level. The accident happened in winter. Snow had been graded out of the highways so that in addition to the dirt embankment on the north side of the east-west highway there was a four-foot embankment of snow thereon.

Miller testified that when he was about one hundred twenty feet north of the intersection he could see the top of the Clocherez car approaching the intersection from the east. He estimated that the Clocherez car was also about one hundred twenty feet from the intersection. Miller testified he was driving about forty to forty-five miles per hour.

Berens testified that when the Miller car was about one hundred feet north of the intersection he saw the top of the Clocherez car and estimated that it was about one hundred feet east of the intersection.

An undersheriff, who was called to the scene of the accident, testified that a driver approaching the intersection from the east could not see traffic approaching from the north until he was within seventy-five feet of the east line of the intersection, because of the embankment. However, he testified that he was speaking of conditions at the time of the trial and not on the day of the accident. He admitted that there was "quite a bit of snow piled up there" and he could not tell from what distance east of the intersection a driver could see traffic approaching from the north on the day of the accident. No tests were made and no measurements were taken on that day. It does not follow that Clocherez could see any portion of the Miller car at the time the top of his car was observed.

Mrs. Grace Clocherez, mother of Hubert, testified that she looked to the north as soon as the car in which she was riding passed the obstruction to her right. She could see the highway to the north but did not see any vehicle approaching. The fact that Mrs. Clocherez looked to the north and saw nothing does not prove that Hubert was negligent as to lookout. The record discloses that the Miller car was then in sight. She failed to see it, but her negligence as to lookout is not an issue.

Hubert Clocherez testified that because of the snow on the day of the accident he was unable to see traffic approaching from the north until he was within thirty-five feet of the east line of the intersection. On cross-examination he admitted that the distance might be somewhat more than that but that he did look to the north at the earliest possible point and saw the Miller car approaching; that the Miller car was between the stop sign and the crest of the hill, and was more than twice as far from the intersection than was his own car; that he knew there was a stop sign to the north and that he expected the Miller car to stop. His testimony is not disputed.

With respect to the claimed negligence of the driver, Clo- 'cherez, as to management and control of his car, the appellants rely upon his statement that he did not, upon seeing the Miller car, reduce or accelerate his speed or turn to the right or left to attempt to avoid the accident. The testimony shows that on the date of the accident all of the highways in that area were covered with packed snow. One witness testified that the highways near the intersection were icy. Miller testified that he knew of the stop sign; that he applied his brakes when he was one hundred twenty feet north of the intersection and his car skidded straight down the highway through the stop sign and into the intersection at a speed of twenty to twenty-five miles an hour; that his car did not skid sideways; that he attempted to turn his car into the snowbank but he was unable to do so. Berens testified to the same effect, except that he thought the brakes were applied one hundred feet from the intersection and that Miller's speed at that time was between thirty-five and forty miles per hour.

The Clocherez car had but one door on each side. The front of the Miller car struck the Clocherez car at the rear of the door on the right side. At that time the rear of the Clocherez car was about at the center of the intersection.

Several cases are cited by the appellants where it has been held that a driver having the right of way may be negligent in the operation of his car when it is apparent that an approaching car is out of control or for some reason is not going to yield the right of way. The facts in those cases are all distinguishable from the facts in this case. A review thereof would be of no value here. In cases where the danger is not apparent to a driver on an arterial or to one having the right of way at an intersection, this court has always held that such a driver has the right to assume that the one approaching will yield the right of way. The undisputed testimony here is that Clocherez first saw the Miller car when it was

approximately twice the distance from the intersection that he was, whether that distance was thirty-five or fifty feet; that he knew he was on an arterial highway and had the right of way. There was nothing about the appearance of the Miller car that would indicate it was not going to stop and yield the right of way. The Miller car was approaching in a straight line and its speed was becoming less. There was testimony that the stop sign was partially covered with snow. However, Miller testified that he saw the stop sign when he was about thirty feet north of it. There is no testimony as to the location of the stop sign on the date of the accident. One of the officers testified that shortly before the trial it was seventy-five feet from the north edge of the intersection.

In granting the motion for a directed verdict the trial court analyzed the testimony as follows:

"The court is of the opinion that the evidence discloses that the sole and only cause of this collision was the admitted negligence on the part of the defendant, Roland D. Miller, in the operation of his automobile. The speed at which he was going as he approached this arterial highway was such that he was unable to keep his car under control, and to that extent he was negligent; and also his invading the right of way of Hubert Clocherez by crossing the arterial highway, being obliged, under the circumstances, to stop. The undisputed testimony is to the effect that he started stopping his car one hundred twenty feet away from the intersection; that he saw the arterial stop sign, even though it was partially obstructed, he saw it, nevertheless, when he was at least one hundred five feet from the north limits of the highway, and under the circumstances it was his duty to stop; and that a person driving along an arterial highway, at a moderate rate of speed, such as the plaintiff, Hubert Clocherez, was operating his automobile at that time, has a right to assume that other persons will comply with the rules of the road and will not violate the law in respect to operating automobiles. There was nothing in the case that gave him sufficient warning of any violation on the part of the defendant, Miller, of the law

so as to cause him, Clocherez, to assume any greater responsibility.

"The court is of the opinion that, under the circumstances of this case the plaintiff, Clocherez, was operating his automobile in a careful manner, and that there is no negligence proven in this case, and that there is no question of negligence that the court has a right to submit to the jury, it being the duty of the court to decide all questions of law.

"The court finds, as a matter of law, that there is no negligence on the part of Hubert Clocherez, and therefore, the motion for directed verdict is granted."

We agree with the trial court that the testimony presented no jury question and the motion for a directed verdict was properly granted.

*By the Court.*—Judgment affirmed.